IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RODERICK D. PARSONS, et al.,
*individually, and on behalf of all
others similarly situated in the State
of West Virginia*,

               Plaintiffs,

v.                                             CIVIL ACTION NO. 2:19-cv-00649

COLUMBIA GAS TRANSMISSION,
LLC, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Roderick D. Parsons, Charles B. Hunt, Brenda L. Hunt, Jerry E. Cunningham, Belinda Cunningham, Chelsea R. Miller, James D. Miller, Bruce W. Cunningham, Joseph Cunningham, Annettea S. Fields, Kelvin M. Greathouse, Kay M. Greathouse, David S. Casto, Debra D. Casto, Jacob Somerville, and Pamela Doss (collectively, "Plaintiffs") bring this purported class action against Defendants Columbia Gas Transmission, LLC ("CGT") and Columbia Pipeline Group Services Company ("CPG") (collectively, "Defendants"), alleging that Defendants unlawfully stored natural gas in a storage field underlying Plaintiffs' properties and, in the process of withdrawing the storage gas, unlawfully removed "native gas" that occupied the storage field prior to the injection of storage gas. (ECF No. 2.) Before this Court is Defendants' Partial Motion to Dismiss Plaintiffs' Complaint. (ECF No. 15.) For the reasons explained more fully herein, the motion is **DENIED**.

## I.     BACKGROUND[1]

Plaintiffs are landowners whose real property "lies within the boundaries of CGT's Ripley Storage Field." (ECF No. 2 at 2–4.) The Ripley Storage Field is one of twelve such underground natural gas storage fields that CGT, a subsidiary of CPG, operates throughout West Virginia "under authorization granted by, and subject to the jurisdiction of, the Federal Energy Regulatory Commission ("FERC")." (*Id*. at 4, 5.) When the demand for natural gas is low, Defendants inject natural gas into these underground storage fields, and the natural gas is withdrawn when demand is high. (*Id*. at 6.) But in the process, Defendants "also remove[] some quantity of 'native gas' that pre-existed [Defendants'] injection of storage gas into the [underground storage field]." (*Id*.)

Defendants obtain the legal right to store and remove natural gas by either negotiating an agreement with the landowners within whose property the underground storage field lies or using eminent domain authority granted under the Natural Gas Act ("NGA"), 15 U.S.C. § 717, *et seq*. (*Id*.) However, Defendants cannot do so without first procuring a FERC-approved certificate of public convenience and necessity designating the boundaries of the underground storage field. (*Id*. at 8.) A predecessor of Defendants first obtained such a certificate for the Ripley Storage Field on March 23, 1953, and began gas-storage operations at some point between that date and 1971. (*Id*. at 6.) Defendants later determined that the FERC certificate did not cover the entirety of their operations in the Ripley Storage Field, so they sought and obtained an expanded FERC certificate, which was awarded on September 21, 1992. (*Id*. at 7.)

---

[1] "In reviewing a motion to dismiss for failure to state a claim, [this Court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). As such, the following summary of facts is derived from Plaintiffs' complaint.

Although Defendants maintain records identifying the landowners whose real property lies within the boundaries of their underground storage fields, those records are not available to the general public "or even to the persons or entities who own real property or mineral rights within the certificated boundaries." (*Id.* at 9.) Therefore, the landowners cannot themselves ascertain whether one of Defendants' underground storage fields "extends below their real property or any real property to which they hold mineral rights, thereby allowing [Defendants] to use the property without paying just compensation." (*Id.*) Defendants have previously notified some Plaintiffs "that their real property is located above the Ripley Storage Field, and that [Defendants have] been using the Ripley Storage Field for an indeterminate amount of time without previous notice and without paying just compensation" for that use. (*Id.*) Plaintiffs have not reached an agreement with Defendants to allow for the use of their property, nor have Defendants acquired the right to use Plaintiffs' property through eminent domain during the time Defendants have operated the Ripley Storage Field. (*Id.* at 10.) "As a result, [Defendants have] knowingly and wrongfully taken Plaintiffs' property without paying just compensation." (*Id.*)

Based upon this conduct, Plaintiffs allege claims for trespass, conversion, unjust enrichment, and inverse condemnation. (*Id.* at 12–17.) They also seek a declaratory judgment that they "are entitled to just compensation for [Defendants'] use of their properties for storage of gas, past and present," and that Defendants must negotiate an agreement to use Plaintiffs' property or institute eminent domain proceedings, as well as a permanent injunction prohibiting the use of their property unless Defendants do so. (*Id.* at 17–19.)

3

Defendants filed their Partial Motion to Dismiss Plaintiffs' Complaint on November 1, 2019. (ECF No. 15.) Plaintiffs timely responded on January 15, 2020 (ECF No. 26), and Defendants timely replied on January 31, 2020 (ECF No. 27). As such, Defendants' motion is fully briefed and ready for resolution.

## II. LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of

4

truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III. DISCUSSION

CGT moves to dismiss Counts One, Two, Three, Four, Six, and Seven of Plaintiffs' complaint, and CPG moves to dismiss all of Plaintiffs' claims against it. (ECF No. 15 at 1.) Specifically, Defendants argue that Plaintiffs' claims for trespass, conversion, and unjust enrichment are preempted by the NGA and are barred by the applicable statute of limitation, leaving only claims for inverse condemnation, which do not entitle Plaintiffs to the damages, injunctive relief, and declaratory relief sought. (ECF No. 16 at 6–11.) In addition, they argue that no claims lie against CPG because it does not operate the Ripley Storage Field. (*Id.* at 11.)

*A. Timeliness of Claims*

This Court first turns to Defendants' argument that Plaintiffs' claims for trespass, conversion, and unjust enrichment are time-barred. *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 828–29 (4th Cir. 2010) (stating that court must address statute-of-limitation argument prior to reaching preemption question); *see Bell Atl. Md., Inc. v. Prince George's Cty.*, 212 F.3d 863, 865 (4th Cir. 2000). Defendants

contend that claims for trespass and conversion must be brought within two years of the date Plaintiffs discovered or should have discovered their injuries and that claims for unjust enrichment must be brought within five years of that time. (*Id.* at 10.) According to Defendants, "Plaintiffs admit that the key facts giving rise to their claims, notably [CGT] or its predecessor storing natural gas on their property, arose as late as the 1970's and as early as the 1950's." (*Id.* at 10–11 (citing ECF No. 2 at 6).)

This Court may dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) as barred by the applicable statute of limitation only if "[a]ll facts necessary to decide whether" the claim is time-barred, "including when the cause of action first accrued, appear on the face of the complaint." *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 577 (4th Cir. 2017) (citing *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850–51 (4th Cir. 2016)); *Sansom v. TSI Corp.*, No. 2:17-cv-04444, 2019 WL 1179410, at *1 (S.D.W. Va. Mar. 13, 2019) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). Because Plaintiffs bring their claims pursuant to West Virginia law, this Court looks to state law to determine the limitations period for each claim and further applies "any rule . . . that constitute[s] 'an integral part of the state statute of limitations.'" *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 (4th Cir. 1999) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980)); *Sizemore v. Burnett*, No. 5:17-cv-02498, 2018 WL 1185507, at *3 (S.D.W. Va. Mar. 7, 2018) ("Because this case is an action within the Court's diversity jurisdiction, the Court applies the West Virginia statute of limitations and any West Virginia law construing it.").

West Virginia law instructs that this Court must utilize "[a] five-step analysis . . . to determine whether a cause of action is time-barred." Syl. Pt. 5, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Under this framework, this Court first "identif[ies] the

6

applicable statute of limitation for each cause of action." *Id.* Claims for trespass appear to be governed by the two-year limitations period generally applicable to "personal action[s] [for damage to property] for which no limitation is otherwise prescribed." W. Va. Code § 55-2-12(a); *see Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp.*, No. 3:15-cv-13415, 2016 WL 955627, at *3 (S.D.W. Va. Mar. 11, 2016) ("The parties agree that an action for trespass . . . in West Virginia must be brought within the applicable two year statute of limitation period as provided in W. Va. Code § 55-2-12."); *Wendy Rupe Tr. v. Cabot Oil & Gas Corp.*, No. 2:09-cv-01435, 2010 WL 3894039, at *3 (S.D.W. Va. Sept. 30, 2010) ("The parties agree that West Virginia's two-year statute of limitations applies to the count of trespass." (citing W. Va. Code § 55-2-12)). Claims for conversion are also subject to that statute. *Dunn*, 689 S.E.2d at 268. And the five-year limitations period in West Virginia Code § 55-2-6 likely applies to unjust enrichment claims based on the taking of private property without just compensation. *See id.* at 267 ("[I]f a particular cause of action sounds in both equity and law, then a trial court should apply a statute of limitation to that particular cause of action. Likewise, if a lawsuit involves causes of action that sound in equity, and other causes of action in law, only the causes of action sounding in law would be subject to statutes of limitation." (emphasis deleted) (citing Syl. Pt. 4, *Bennett v. Bennett*, 115 S.E. 436 (W. Va. 1922))); Syl. Pt. 3, *Mason v. Harper's Ferry Bridge Co.*, 17 W. Va. 396 (W. Va. 1880) ("Equity has jurisdiction to restrain the taking or damaging of private property for public use without just compensation, even though an action at law will lie for the recovery of damages in such cases, after the property has been so taken or damaged.").[2]

---

2 Notably, Plaintiffs have not challenged Defendants' assertion that the five-year statute of limitation applies to their unjust enrichment claims. (*See* ECF No. 26 at 16–19; *see also* ECF No. 16 at 10.)

Moving on to the second step of *Dunn*'s five-step analysis, this Court next "identif[ies] when the requisite elements of the cause of action occurred." Syl. Pt. 5, *Dunn*, 689 S.E.2d 255. Defendants argue that the complaint avers that their allegedly unlawful conduct occurred, at the latest, in the 1970s. (ECF No. 16 at 10–11.) Plaintiffs, on the other hand, contend that trespass, conversion, and unjust enrichment constitute "continuing torts" because Defendants "inject[] new gas into the storage field and receive[] fees from [their] customers *every summer*." (ECF No. 26 at 16 (emphasis in original).) But the complaint alleges no facts about how often Defendants inject natural gas into the underground storage fields or when it is removed. (*See* ECF No. 2.)

However, although Plaintiffs aver that Defendants "began gas storage operations in the Ripley Field in or before 1971," the complaint's allegations do not indicate whether Plaintiffs owned their property at the time those operations began. (*See id.* at 6.) Claims for trespass and conversion cannot possibly accrue absent an interference with a property right. *See* Syl. Pt. 17, *Rodgers v. Rodgers*, 399 S.E.2d 664 (W. Va. 1990) ("Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion . . . ."); *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945) (defining "trespass" as "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property"). Plaintiffs' claims for unjust enrichment are likewise based on Defendants' allegedly unlawful use of their property. (*See* ECF No. 2 at 14–15.) *See Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884–85 (W. Va. 2000) (per curiam) (describing unjust enrichment generally, "if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party

8

receiving the benefits to pay their reasonable value" (citing *Copley v. Mingo Cty. Bd. of Educ.*, 466 S.E.2d 139 (1995))). Because it is unclear from the complaint whether Plaintiffs owned their property in 1971, it cannot be said that the allegedly unlawful conduct giving rise to Plaintiffs' claims occurred then.

In other words, the facts necessary for Defendants to establish that Plaintiffs' claims are time-barred are not apparent on the face of the complaint, and Defendants' motion to dismiss Plaintiffs' trespass, conversion, and unjust enrichment claims on that basis is **DENIED**. *See Meridian Invs., Inc.*, 855 F.3d at 577.

B. *NGA Preemption*

Defendants also argue that the NGA preempts Plaintiffs' claims for trespass, conversion, and unjust enrichment. (ECF No. 16 at 6–8.) Because the Constitution's supremacy clause renders federal law "the supreme Law of the Land," U.S. Const. art. IV, cl. 2, federal law has "the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000); *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210–11 (1824)). It may do so "in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007). Ultimately, regardless of the type of preemption utilized, this Court must determine "whether Congress intended to displace state law." *Va. Uranium, Inc. v. Warren*, 848 F.3d 590, 594 (4th Cir. 2017) (quoting *Wardair Can., Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 6 (1986)). The governing assumption is that it did not. *Anderson*, 508 F.3d at 192 (quoting *S. Blasting Servs., Inc. v. Wilkes Cty.*, 288 F.3d 584, 589 (4th Cir. 2002)).

In this case, Defendants contend that "both 'field preemption' and 'conflict preemption' bar Plaintiffs' common law claims of trespass, conversion, and unjust

9

enrichment." (ECF No. 16 at 6.) Field preemption "preclude[s] [states] from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399 (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 115 (1992) (Souter, J., dissenting)). Such congressional intent "may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Defendants correctly point out that states are prohibited from regulating "the interstate shipment and sale of gas to local distributors for resale" and that the NGA is intended to serve as the exclusive means for doing so. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 378 (2015). (ECF No. 16 at 6–7 (quoting *Schneidewind*, 485 U.S. at 300–01).) The storage of natural gas falls within the NGA's purview. *See Schneidewind*, 485 U.S. at 295 n.1. For Defendants, that is the end of the analysis. (ECF No. 16 at 7.)

However, Defendants' argument assumes that the NGA provides a natural gas company with an absolute right to store natural gas free from state regulation, and that is plainly not the case. *See Oneok, Inc.*, 485 U.S. at 384–85 ("[T]he [NGA] 'was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way.'" (quoting *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507, 517–18 (1947))); *see also Van Scyoc v. Equitrans, L.P.*, 255 F. Supp. 3d 636, 643 (W.D. Pa. 2015) ("Natural gas regulation is not a completely preempted field." (citing *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 895 (7th Cir.

2013); *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 593 (6th Cir. 2013))). Without a FERC certificate obtained pursuant to the NGA, a natural gas company has no authority to use a landowner's property in furtherance of its operations. *See Sierra Club, Inc. v. U.S. Forest Serv.*, 897 F.3d 582, 588 (4th Cir. 2018) ("Pursuant to the [NGA], a natural gas company is not permitted to undertake construction of a pipeline unless FERC first issues a Certificate authorizing such construction." (citing 15 U.S.C. § 717f(c)(1)(A))).

And even after the natural gas company obtains a FERC certificate, it has no legal right to immediately possess the property that is the subject of the certificate. *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004) ("The [NGA] . . . contains no provision for quick-take or immediate possession."). Rather, absent a negotiated agreement with the landowner, the right to immediate possession may be granted in a condemnation action following a determination by the court "that the company has the right to condemn the property in question." *Id.* at 825. The fact that this condemnation right is conveyed by 15 U.S.C. § 717f(h), *see id.* at 822, suggests that in order to lawfully use a landowner's property in furtherance of its operations, a natural gas company must comply with the provisions set forth in that statute. *See Dominion Energy Transmission, Inc. v. 0.11 Acres of Land*, No. 1:19-cv-182, 2019 WL 4781872, at *3 (N.D.W. Va. Sept. 30, 2019) ("[T]o establish that it has the right to condemn, Dominion must demonstrate only that (1) it holds a FERC Certificate, (2) it needs to acquire the easements, and (3) it has been unable to acquire them by agreement." (citing § 717f(h))).

Taken together, these principles lead this Court to strongly doubt the existence of congressional intent to entirely preclude a landowner's state-law claims based on a natural gas company's unauthorized use of the landowner's property. *See Wilson v. Columbia Gas Transmission, LLC*, No. 2:12-cv-1203, 2013 WL 12186158, at *2 (S.D. Ohio

11

Sept. 17, 2013) ("Taking as true the complaint's allegation that Columbia has used plaintiffs' properties to store gas and has removed native gas, and acknowledging the plausible inference raised by the complaint that discovery could show that Columbia lacks a certificate pertaining to plaintiffs' properties, the court finds that Columbia's argument for field preemption is unavailing . . . ."); *see also Beck v. N. Nat. Gas Co.*, 170 F.3d 1018, 1022–23 (10th Cir. 1999) (upholding damages award in favor of landowner plaintiffs for trespass and unjust enrichment claims based on migration of gas from formation with FERC certificate into formation without FERC certificate). Quite simply, nothing in the language of the NGA indicates that it was intended to excuse from state-law tort and contractual liability a natural gas company that chooses—whether consciously or not—to disregard the NGA's requirements. *See Humphries v. Williams Nat. Gas Co.*, 48 F. Supp. 2d 1276, 1279 (D. Kan. 1999) ("Had WNG followed the letter and intent of § 717f(h), the court would agree that all of Humphries' state law claims for trespass and unlawful taking would be preempted by federal law."); *see also Wilson*, 2013 WL 12186158, at *3 ("Given that § 717f(h) does not give a certificate holder the right to immediate possession, and given the complaint's allegation that Columbia has failed to abide by the negotiation requirement of § 717f(h), the Court again finds that Columbia's argument for preemption is unavailing at this stage." (internal citation omitted)); *Baatz v. Columbia Gas Transmission, LLC*, No. 1:14-cv-505, slip op. at 8 (N.D. Ohio Dec. 22, 2016) (ECF No. 58) (expressly adopting holding in *Wilson*, a related case, that state-law claims for trespass and unjust enrichment not preempted when gas company does not comply with § 717f(h)).

Defendants, citing *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement in the Clinton Subterranean Geological Formation*, 747 F. Supp. 401

(N.D. Ohio 1990), nonetheless argue that Plaintiffs' only recourse for the alleged unauthorized use is to bring a claim for inverse condemnation. (ECF No. 16 at 7–8.) This Court agrees that after a natural gas company acquires a FERC certificate and either contracts with the landowner to use his property or institutes condemnation proceedings against the landowner pursuant to § 717f(h), the landowner is limited to an action for inverse condemnation to seek just compensation for any taking beyond what the landowner or the court authorized. *See Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 363–64 (4th Cir. 2019) (stating that landowner may bring separate inverse condemnation action if natural gas company "take[s] more than it described in its complaint" for condemnation).

But a natural gas company, unlike a sovereign, has no inherent right to take private property and convert it for its own use; rather, its power to do so derives from § 717f(h). *Humphries*, 48 F. Supp. 2d at 1281; *see Sage*, 361 F.3d at 818 ("Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise 'the right of eminent domain' over any lands needed for the project." (citing § 717f(h))). This Court thus does not agree that a condemnation action filed by the natural gas company pursuant to that statute extinguishes a landowner's state-law claims targeting the company's allegedly unauthorized use prior to the filing of the condemnation action. *See Bowyer v. Rover Pipeline, LLC*, No. 1:16-cv-203, 2017 WL 342057, at *3 (N.D.W. Va. Jan. 23, 2017) ("[T]he NGA certainly does not operate to completely preempt state eminent domain law prior to the issuance of a FERC Certificate."); *Columbia Gas Transmission LLC v. Crawford*, 267 F.R.D. 227, 228 (N.D. Ohio 2010) (holding that NGA did not preempt state-law claim "for Columbia Gas's alleged trespass *before* Columbia Gas secured federal authorization (in the form of the July 2009 FERC certificate)" (emphasis in original)); *see also Sage*, 361

F.3d at 825–26 (suggesting that until natural gas company has adequately compensated landowner for use of property, company commits trespass) (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 660 (1890)). Put simply, before the natural gas company acquires the right to use the landowner's property, it is simply a private party using the property of another private party. An inverse condemnation action is not appropriate in that situation. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2168 (2019) ("Inverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant.'" (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980))).

For that reason, Defendants' argument that Plaintiffs' claims for trespass, conversion, and unjust enrichment are barred by conflict preemption likewise fails. (ECF No. 16 at 6.) Conflict preemption "arise[s] when 'compliance with both federal and state regulations is a physical impossibility'" or "when 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1039 (S.D.W. Va. 2011) (quoting *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Defendants do not argue that they are unable to abide by both the NGA and West Virginia state law. (*See* ECF No. 16 at 6–7.) And as this Court has just explained, the state laws at issue in this case do not interfere with the NGA's aims but instead encourage natural gas companies to comply with its provisions. *See Columbia Venture*, 604 F.3d at 830 (stating that "obstacle preemption" "occurs where state law 'interferes with the *methods* by which the federal statute was designed to reach [its] goal'" (quoting *Gade*, 505 U.S. at 103) (emphasis in original)).

14

In sum, to the extent Plaintiffs' claims for trespass, conversion, and unjust enrichment address Defendants' use of Plaintiffs' land either outside the boundaries of the FERC certificate, or in the absence of an agreement with the landowner or a court order condemning the property or otherwise providing for Defendants' immediate possession, those claims are not preempted by the NGA. Defendants' motion to dismiss those claims is **DENIED**.

C. *Scope of Relief*

Defendants' argument that Plaintiffs cannot seek unjust enrichment damages and injunctive or declaratory relief is based on their assertion that Plaintiffs are limited to claims for inverse condemnation. (ECF No. 16 at 8–10.) As this Court has just explained, however, a landowner may bring an inverse-condemnation action to seek compensation for a taking of property that lies within the bounds of the natural gas company's FERC certificate but is outside the scope of the landowner's contract with the company or the court order authorizing condemnation. The complaint's allegations that Plaintiffs' property "lies within the boundaries of CGT's Ripley Storage Field," that the exact boundaries of the Ripley Storage Field set forth in the FERC certificate are not publicly available, and that Defendants notified some Plaintiffs that they had been using their property "for an indeterminate amount of time without previous notice and without paying just compensation" (ECF No. 2 at 2–4, 9) imply that Plaintiffs bring claims for which inverse condemnation may not be an appropriate cause of action.

Defendants nonetheless contend that "[i]nverse condemnation supplies complete relief to the landowner." (ECF No. 16 at 9; ECF No. 27 at 4.) But if, as Defendants argue, "[d]amages for inverse condemnation claims are 'generally limited to the fair market value of the property taken'" (ECF No. 16 at 8 (quoting *Presley v. City of*

15

*Charlottesville*, 464 F.3d 480, 493 (4th Cir. 2006) (Traxler, J., dissenting))), the landowner would not be compensated for the natural gas company's allegedly unlawful use occurring before the issuance of the FERC certificate or prior to the landowner's agreement with the company or the court order authorizing condemnation. *Moore v. Equitrans, L.P.*, No. 1:12-cv-123, 2017 WL 1455022, at *1 (N.D.W. Va. Apr. 21, 2017) ("[T]he judgment in the condemnation action is for the amount of just compensation for the taking of the right of way and does not serve as a remedy for Equitrans' prior trespass." (citing *Humphries*, 48 F. Supp. 2d at 1279 n.3)); *Baatz*, No. 1:14-cv-505, slip op. at 15 (ECF No. 58) ("Columbia's cases do not support the conclusion that paying for the value of an easement in 2016 after the property has been used without compensation for decades can somehow fairly incorporate damages for the trespass."); *Wilson*, 2013 WL 12186158, at *3 ("[T]he complaint alleges the existence of both pre-certificate and pre-negotiation wrongful conduct by Columbia. Columbia has not demonstrated in its motion to dismiss how, if those allegations are true, § 717f(h) would provide a remedy to plaintiffs for such conduct."). It is simply not clear at this juncture whether Plaintiffs' claims for inverse condemnation would provide them the totality of the relief to which they would be entitled. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for declaratory and injunctive relief and to preclude unjust enrichment damages is **DENIED**.

### D. Claims against CPG

Finally, Defendants assert that all of Plaintiffs' claims against CPG should be dismissed because the complaint alleges—and it is apparently true—that CGT, not CPG, operates the Ripley Storage Field. (ECF No. 16 at 11.) Plaintiffs contend that "[t]his is an issue of fact which must be shown in discovery." (ECF No. 26 at 19.) However, the complaint indeed avers that CGT operates twelve underground storage fields in West

Virginia and that CGT is a subsidiary of CPG. (ECF No. 2 at 4.) This Court must accept those facts as true in ruling on Defendants' motion to dismiss. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) ("In reviewing a motion to dismiss for failure to state a claim, [this Court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016))). But this Court is also bound by the complaint's assertions that both Defendants collectively engaged in the conduct that is alleged to be unlawful. (ECF No. 2 at 5–10.) In light of those allegations, Defendants' motion to dismiss Plaintiffs' claims against CPG is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss Plaintiffs' Complaint (ECF No. 15) is **DENIED**.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 28, 2020

Dwane L. Tinsley
United States Magistrate Judge